## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DUFFY ARCHIVE LIMITED,

      *Plaintiff,*

          v.

VELVET BULLDOG, LLC d/b/a
ROBERT KIDD GALLERY, GERARD
MARTI, and VANWORMER & MARTI
PUBLISHING LLC,

      *Defendants.*

_____/

Case No. 2:22-cv-10968

District Judge
Gershwin A. Drain

### ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT AND/OR  MOTION FOR FINAL SUMMARY JUDGMENT (AGAINST MARTI) [#42]

This matter is before the Court on Plaintiff Duffy Archive Limited's ("Plaintiff") Motion for Default Judgment and/or Summary Judgment. ECF No. 42. Plaintiff filed its Motion on June 6, 2023, seeking default judgment against defendants Velvet Bulldog, LLC d/b/a Robert Kidd Gallery (the "Gallery"); Vanwormer & Marti Publishing LLC ("VMP") (collectively, the "Entity Defendants"); and Gerard Marti ("Marti")[1]. *Id* at PageID.194. Plaintiff also seeks, in the alternative, summary judgment against Marti individually. *Id.* Plaintiff brings its

---

[1] The Entity Defendants and Marti are collectively referred to herein as "Defendants."

Motion citing Defendants' monthslong failure to participate in this litigation. Defendants did not file a response.

The Court finds that oral argument will not aid in the disposition of this Motion and will, accordingly, resolve it on brief and pleadings. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated herein, the Court will grant Plaintiff's Motion in part and will enter partial default judgment against all Defendants. For this reason, the Court does not consider Plaintiff's alternative request for summary judgment against Marti.[2]

## I.     BACKGROUND[3]

Plaintiff is a private British company that owns and manages the copyrights to the works of famous deceased photographer Brian Duffy. In managing the value and legacy of Duffy's art, Plaintiff routinely loans Duffy's images to third parties on a consignment basis for exhibition and sale. Through these consignment agreements, Plaintiff retains ownership of the loaned works unless and until the third party successfully sells them. Plaintiff entered into such a contract in February 2019 (the

---

[2] "The appropriate procedure against a defendant in default is a motion for default judgment, not a motion for summary judgment." *See Game Craft, LLC v. Vector Putting, LLC,* No. 6:14-cv-243-Orl-41KRS, 2015 U.S. Dist. LEXIS 195909, at *3 (M.D. Fla. Apr. 15, 2015) (citing *Phillips Factors Corp. v. Harbor Lane of Pensacola, Inc.*, 648 F. Supp. 1580, 1582-83 (M.D.N.C. 1986); *United States v. Estate of Segel*, No. 8:08-cv-2196-T-23EAJ, 2010 U.S. Dist. LEXIS 41301, 2010 WL 1730749, at *1 (M.D. Fla. Apr. 27, 2010)).

[3] Because Defendants have never offered  a contrary statement of facts, the Court recounts the uncontested facts as outlined in Plaintiff's pleadings.

"Agreement") with the Gallery, located in Birmingham, Michigan, and with its owner and sole member, Marti.[4] ECF No. 1, PageID.4 ¶ 18.

Under the Agreement, Plaintiff was to supply Defendants with prints of Duffy's works related to famous deceased musician David Bowie. *Id.* at PageID.29–30; PageID.38–40. The display prints loaned to the gallery were explicitly marked as exhibition prints and were "not for sale or to be disposed of in any way" and were required to "be accounted for and returned to [Plaintiff] when requested." *Id*. It was only when Defendants completed a valid sale that Plaintiff "would supply a limited edition print of the subject photograph" with authenticating documents. *Id.* at PageID.21, 28.

## A.    Beginning of the Relationship

Plaintiff first shipped display prints to the Robert Kidd Gallery in March 2019. *Id.* at PageID.5 ¶ 22. The most notable of them was a display print of the cover photograph for Bowie's 1973 studio album "Aladdin Sane." *Id.* at PageID.8 ¶ 40. In addition, the gallery received fourteen display prints and two limited edition prints. *Id.* Upon receipt of the items, the gallery informed Plaintiff that the prints were damaged at the corners, and Plaintiff subsequently re-supplied the prints to the gallery at a subsidized fee. *Id*. at PageID.5 ¶¶ 23–24. The gallery held an exhibition

---

[4] Defendants denied in their Answer that Marti is the owner of the Gallery (ECF No. 14, PageID.81), but they have not since identified the alleged true owner.

in September 2019 at which two of Plaintiff's prints were sold; these were the only official sales under the Agreement and were the only sales for which Plaintiff was paid. *Id.* at PageID.6 ¶ 29.

### B. The Dispute

Around December 2020, Marti launched a website for the "Townsend Street Gallery," an apparent rebrand of the Robert Kidd Gallery. ECF No. 1, PageID.6 ¶ 32. According to Plaintiff, Marti used this website to publish one of Duffy's prints. The print was depicted in a virtual living room as wall art. *Id.* at ¶ 34. It does not appear that Marti listed the print for sale on the website.

In March 2022, Plaintiff received correspondence from a prospective customer of the gallery. The customer was interested in purchasing the Aladdin Sane Cover Photograph and had discussed purchasing a limited-edition copy from the Gallery. *Id.* at PageID.10 ¶¶ 48–49. According to Plaintiff, the customer reached out to authenticate the offered work because Marti offered her the "last copy" of the photograph for $90,000 before quickly dropping his offer to $60,000 upon her request for more information. *Id.* at ¶¶ 49–50.

Contrary to what he told this customer, Marti was only in possession of an exhibition-marked copy of the Aladdin Sane Cover Photograph, valued at roughly $314 at the time this Motion was filed. *Id.* at ¶ 51. According to text messages between the two, Marti made numerous untrue statements to the prospective

customer in hopes of convincing her to purchase the print. *Id.* at PageID.10–11. Among these statements were claims that (1) "the Bowie picture is the last one," (2) at $60,000 he was offering "a 35% discount off the regular price," (3) even though the print was stamped "for exhibition only," it was exclusive in that "the edition is completely sold out," (4) he had "bought" the print having no idea it would skyrocket in value, and (5) he could offer "one signed by the Photographer and David Bowie" which would cost $275,000. *Id.* at PageID.10–12 ¶¶ 52–55.[5] The messages also reveal that Marti offered the prospective customer a "cheap reproduction" poster of the Aladdin Sane Cover Photograph for $1,800. *Id.* at PageID.12–13 ¶¶ 56–58. The poster reproduces the image substantially in black in white, includes sketching not true to the original, and bears a signature that Plaintiff alleges belongs to Marti. *Id.*

Without informing Marti that it had learned of his interaction with the prospective customer, Plaintiff requested that Marti return the consigned display and limited edition prints to Plaintiff. *Id.* at PageID.15–16 ¶ 69. Marti refused to return the prints. He missed numerous deadlines in April 2022 to ship the prints back to Plaintiff and had asserted over time (1) that he could not remove them from their frames for shipment because his framer was sick; (2) that his framer died of COVID-19, preventing him from unframing and shipping the prints back; (3) that he would

---

[5] Plaintiff asserts that no such image signed by both Duffy and Bowie exists. ECF No. 1, PageID.12 ¶ 55.

prefer to purchase the prints rather than return them; (4) that his employee destroyed four of the prints in an attempt to remove them from their frames. *Id.* at PageID.15–17 ¶¶ 69–78. Plaintiff believes that Marti went through these pains to avoid returning the works because he had fraudulently sold them to customers of the Gallery.

### C. Procedural History

Plaintiff filed its Complaint on May 5, 2022, asserting violations of federal copyright laws, breach of contract, fraud in the inducement of a contract, common law conversion, statutory conversion (Mich. Comp. Laws § 600.2919a), civil conspiracy, and violation of the Michigan Consumer Protection Act (Mich. Comp. Laws §§ 445.903). ECF No. 1. The Court entered a scheduling order on November 17, 2022, requiring that the parties finish discovery by May 20, 2023. ECF No. 22. On February 4, 2023, Plaintiff filed a motion to compel discovery, asserting that Defendants had missed multiple deadlines to respond to Plaintiff's discovery request and had even missed a deadline that Plaintiff had agreed to extend. ECF No. 23, PageID.118–120. Before this Motion was decided, Defendants' counsel filed a motion to withdraw, citing a breakdown in the attorney-client relationship. ECF No. 25, PageID.149–150. Magistrate Judge Ivy granted the motion compel on March 7, 2023. ECF No. 27.

On March 9, 2023, the Court held an in-person hearing on the motion to withdraw, ultimately granting the motion on March 21, 2023. ECF Nos 28–29. The

order granting the motion to withdraw required the Entity Defendants to obtain new counsel within 14 days (April 4, 2023), as the Entity Defendants cannot proceed pro se. ECF No. 29, PageID.162. The Entity Defendants never obtained new counsel. The parties separately agreed to set aside the Order granting Plaintiff's motion to compel discovery, which afforded Defendants another opportunity to file a response. ECF No. 30. This response was never filed.

Plaintiff filed a Motion for Clerk's Default against the Entity Defendants on April 5, 2023, citing their failure to obtain counsel within the deadline. ECF No. 32. The Court granted this Motion (ECF No. 37), leaving Marti as the remaining non-defaulted defendant, and scheduled an in-person status conference for April 28, 2023 (ECF No. 36). Marti did not appear and has since been inactive in this litigation.

Plaintiff now brings a Motion for Final Default Judgement and/or Summary Judgment, filed June 6, 2023. ECF No. 42. No defendant has filed a response or otherwise corresponded with the Court regarding Plaintiff's Motion.

## II.    LEGAL STANDARD

### A.    Default Judgment Standard

Before a district court may enter default judgment, the party seeking default must generally follow the two-step procedure outlined in Rule 55. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must

enter the party's default." Fed. R. Civ. P. 55(a). "Once a default is entered, the defendants are considered to have admitted the well pleaded allegations in the complaint, including jurisdiction." *J & J Sports Prods. v. Perr's Pub, Inc.*, No. 17-cv-11897, 2017 U.S. Dist. LEXIS 177278, at *6 (E.D. Mich. Oct. 26, 2017) (citing *Ford Motor Company v. Cross*, 441 F.Supp.2d 837, 845 (E. D. Mich. 2006)).

An exception arises under Rule 37(b)(2)(A) and (d), which both permit a Court to enter default judgment against a party who has filed a responsive pleading but has failed to comply with Court orders at a later point in the litigation. *Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, No. 06-cv-1207, 2009 U.S. Dist. LEXIS 45706, at *7 n.3 (W.D. Tenn. May 27, 2009). As such, "entry of default need not be entered under Rule 55(a) as a prerequisite to the Court's entry of default judgment when such default judgment is imposed as a sanction under Rules 16(f) and 37(b)." *Wade Farms, LLC v. Ceed2Med, LLC*, No. 5:19-cv-124-TBR, 2021 U.S. Dist. LEXIS 115044, at *7 (W.D. Ky. June 18, 2021); *see Colston v. Cramer*, No. 07-CV-12726, 2008 U.S. Dist. LEXIS 14061, 2008 WL 559579, at *1 (E.D. Mich. Feb. 26, 2008).

Before default judgement can be entered, a court must find that there is a sufficient basis in the pleadings for the judgment entered. In other words, a complaint that would not survive a motion to dismiss cannot support entry of default judgment.

*Howard v. Dearborn Motors 1, LLC*, No. 17-12724, 2020 U.S. Dist. LEXIS 45175, at *9 (E.D. Mich. Mar. 16, 2020).

# III.   ANALYSIS

## A.   Default Judgment

Plaintiff's Motion for Default Judgment arises under Federal Rules of Civil Procedure 37 and 55. Rule 55 applies to the Entity Defendants, which have already received a Rule 55(a) clerk's default for their failure to obtain counsel. ECF Nos. 34, 35. Thus, for the Entity Defendants, the Court must only determine whether Rule 55(b) default judgment is appropriate. *See J & J Sports Prods. v. Perr's Pub, Inc.*, 2017 U.S. Dist. LEXIS 177278, at *6. Rule 37 default applies to Marti because there is no prior clerk's default against him, which is required to impose Rule 55(b) default judgment. Instead, Plaintiff argues that the Court should enter default judgment against Marti because he has repeatedly failed to respond to discovery requests or otherwise participate in the litigation. ECF No. 42, PageID.195. Even if the Court finds that it should impose default judgment, it must still determine that liability is supported by the Complaint such that it would survive a motion to dismiss.

### i.   Default Judgment Against Marti is Appropriate Under Rule 37

Before entering default judgment under Rule 37(b), courts consider "(1) whether the party's failure to cooperate in discovery was due to willfulness, bad faith, or fault, as opposed to an inability to cooperate; (2) whether the adversary was prejudiced by the failure to cooperate in discovery; (3) whether the party to be sanctioned was warned that failure to cooperate could lead to default judgment; and

(4) whether less dramatic sanctions were imposed or considered before default judgment was entered." *Davis v. City of Detroit*, Civil Action No. 15-10547, 2016 U.S. Dist. LEXIS 144902, at *5–6 (E.D. Mich. Sep. 29, 2016).

Plaintiff argues that the Court should enter default judgment against Marti considering this standard. ECF No. 42, PageID.195. Default judgment is warranted, Plaintiff asserts, because Marti has failed to defend the claims in this litigation since the day Defendants' former counsel withdrew on March 21, 2023. *Id.* at PageID.195–196; *See* ECF No. 29. According to Plaintiff, Marti "failed to: (a) respond to Plaintiff's motion to compel; (b) appear for the April 28, 2023 in-person status conference; and (c) respond to Plaintiff's First Request for Admissions to Marti." *Id.* at PageID.196. And as noted above, he has not responded to the instant motion. Further, Plaintiff argues that Marti was warned at the March 23, 2023 hearing that his failure to participate in the lawsuit could result in an entry of default judgment. *Id.* Lastly, Plaintiff argues that the balance of prejudice supports default judgment, as it is Plaintiff who has been prevented from proving its serious claims. Having considered the relevant factors, the Court agrees that default judgment is an appropriate sanction in this case.

First, not only did Marti fail to respond to Plaintiff's First Request for Admissions and Motion to Compel as Plaintiff points out, but he also failed to comply with the Order setting aside the Order granting Plaintiff's Motion to Compel.

*See* ECF Nos. 27, 30. That Order afforded Plaintiff additional time to serve discovery responses, on top of the extensions previously agreed to by Plaintiff. But these responses were never served. Marti has not otherwise participated in this litigation and has not expressed an inability to participate during the March 21, 2023 hearing following his attorney's withdrawal. Marti also failed to appear before the Court during the April 28, 2023 hearing on Plaintiff's Motion to extend the deadlines set in the Court's scheduling order.

For these reasons, the Court finds his failure to participate is due to willfulness, bad faith, or fault. *See Conti v. Pidgeon*, No. 07-10930, 2007 U.S. Dist. LEXIS 112986, at *5–6 (E.D. Mich. Sep. 21, 2007) (finding bad faith where "[i]nterrogatories, production requests, and requests to admit remain completely unanswered. Plan documents have not been provided to plaintiffs. Court orders, in addition to discovery requests by plaintiffs, have been entered directing Mr. Pidgeon to produce the discovery. These have been ignored and no reasons have been given.").

Second, Plaintiff has been undoubtedly prejudiced by Marti's failure to participate in discovery. Plaintiff makes serious allegations of copyright infringement, conversion, fraud in the inducement, breach of contract, and violations of other common law and statutory rights. Marti's failure to simply respond to

written discovery has prejudiced Plaintiff by preventing it from moving this claim forward and attempting to prove its allegations.

Third, the Court finds that Plaintiff has been put on sufficient notice of the risk of default. Plaintiff argues that Marti was warned at the March 21, 2023 hearing that the Court could enter default judgment if he failed to comply with Court orders and participate in the litigation. This does not appear to be the case. Nonetheless, Marti was apprised of the risk of default judgment because he was warned that the Entity Defendants (both of which he represents as an agent) were at risk of default judgment at that hearing, and he represented that he understood. Marti is certainly aware that the Entity Defendants were, in fact, later hit with a clerk's default for their failure participate in this action. ECF Nos 34, 35. And of course, Defendant has had ample opportunity to contest Plaintiff's Motion, which was filed over four months ago.

To the extent Marti somehow suggests that he was not aware of the risk of default judgment, that objection would not be dispositive. Rather, "prior notice of the prospect of an ultimate sanction is 'not indispensable' to a finding that a default judgment is the appropriate remedy." *Best Value Auto Parts Distrib., Inc. v. Quality Collision Parts, Inc.*, No. 19-12291, 2023 U.S. Dist. LEXIS 33057, at *39 (E.D. Mich. Feb. 28, 2023) (citing *Fharmacy Records v. Nassar*, 379 F. App'x 522, 524

(6th Cir. 2010)). Notice is merely a factor in the Court's consideration, one that wanes in importance in the face of such blatant insubordination and disregard.

Lastly, the Court finds that default judgment, though severe, is the appropriate sanction here. Marti's refusal to engage in this action has led to the withdrawal of Defendants' counsel, default against the Entity Defendants, and significant delay in the progress of this action. The Court has extended the scheduling order deadlines to provide both parties more time, but this has been fruitless. ECF No. 41. Rule 37 provides for lesser sanctions, such as striking a party's right to object to certain evidence [Fed. R. Civ. P. 37(b)(2)(A)(ii) or  striking pleadings [Fed. R. Civ. P. 37(b)(2)(A)(iii)], but this case has not progressed far enough, produced enough evidence, or otherwise enjoyed enough participation to make these sanctions meaningful.

Accordingly, the Court will enter default judgment of liability against Marti on all of Plaintiff's well-pleaded allegations.

### ii.  Default Judgment Against the Entity Defendants is Appropriate Under Rule 55

A clerk's default has already been entered against the Entity Defendants under Rule 55(a). ECF Nos. 34, 35. As a result, the well-pleaded allegations of Plaintiff's complaint are deemed admitted. *Machhal v. Machhal*, No. 1:21-cv-888, 2023 U.S. Dist. LEXIS 52185, at *8 (W.D. Mich. Mar. 28, 2023) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006)). Thus, the Court must only

decide whether to enter default judgment under Rule 55(b)(2), which it may do at its discretion. *Marelli Auto. Lighting, USA, LLC v. Industrias BM de Mex., S.A. de C.V.*, No. 20-10331, 2021 U.S. Dist. LEXIS 213153, at *2 (E.D. Mich. Nov. 4, 2021).

Before granting a motion for default judgment under Rule 55(b), the Court considers "1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002).

For substantially the same reasons stated with respect to Marti, none of these factors weigh against entering default judgment. Even before the Entity Defendants were found in default under Rule 55(a), they did not respond to any of Plaintiff's discovery requests and did not comply with the subsequent motion to compel. Further, they have been entirely absent since their former counsel withdrew his appearance and have made no argument that the clerk's default or the relief requested in the instant motion would be prejudicial. Accordingly, the Court will enter default judgment of liability upon a finding that the well-pleaded allegations in the Complaint support the requested relief.

### iii. The Pleadings Support Default Judgment in Part

Even though the Court finds that default judgment is procedurally appropriate as to all Defendants, this sanction cannot be imposed unless "there is a sufficient basis in the pleadings for a judgment against the defendant at issue." *Reid v. City of Detroit*, No. 18-13681, 2021 U.S. Dist. LEXIS 70684, at *8 (E.D. Mich. Apr. 13, 2021). Thus, "[i]f the court finds that the facts do not sufficiently state a claim, it will not enter default judgment against the party in default." *Howard v. Dearborn Motors 1, LLC*, , 2020 U.S. Dist. LEXIS 45175, at *9.

In making this assessment, the Court follows an analysis like that used to evaluate Rule 12(b)(6) motions to dismiss. *See Williams v. Dearborn Motors 1, LLC*, No. 17-12724, 2020 U.S. Dist. LEXIS 45175, 2020 WL 1242821, at *3 (E.D. Mich. Mar. 16, 2020) ("For a default judgment to be proper, 'the complaint must be able to survive a Rule 12(b)(6) motion to dismiss.'"). To survive a motion to dismiss, a complaint "does not need detailed factual allegations, but should identify more than labels and conclusions. A complaint also must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 412 (6th Cir. 2019) (cleaned up).

Further, having found pursuant to Rule 55 that damages "are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," the Court will enter judgment on damages where appropriate.

*McGregor Metalworking Cos. v. Lummus Corp.*, No. 3:21-cv-323, 2022 U.S. Dist. LEXIS 46159, at *7 (S.D. Ohio Mar. 15, 2022).

### 1. Count One — Copyright Infringement

Plaintiff alleges that the Gallery and Marti, on the Gallery's behalf, infringed its valid copyright over the Aladdin Sane Cover Photograph and other works. ECF No. 1, PageID.17. To establish a prima facie case for copyright infringement, as governed by 17 U.S.C. § 501(a), Plaintiff must establish two elements. First, the Complaint must demonstrate proof of ownership of a valid copyright. *Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 769 (E.D. Mich. 2014). Second, Plaintiff must show that Defendants copied "constituent elements of the work that are original." *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 627 (6th Cir. 2020).

### a. The Aladdin Sane Cover Photograph

To the first element, generally a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Attached to Plaintiff's Complaint are two certificates of registration for the Aladdin Sane Cover Photograph. The first certificate, Exhibit B, covers the original 1973 "David Bowie – Aladdin Sane" image. ECF No. 1, PageID.33. The second certificate, Exhibit C, covers the outtakes from the Aladdin Sane Cover

Photograph photoshoot, which are depicted in the "Eyes Open Demi Contact Sheet"—one of the prints loaned to the Gallery. ECF No. 1, PageID.35.

Plaintiff concedes that the Complaint does not establish that either certificate of registration was made before or within five years of the first publication of the image. ECF No. 42, PageID.199. Plaintiff argues that this is not a fatal defect, however. Instead, it asserts that courts have properly found a prima facie case where (1) a plaintiff presents a certificate of registration that was created outside of the five-year window and (2) a defendant produces no evidence that it is invalid. *Id.* at PageID.199–200 (citing *Lifetime Homes, Inc. v. Residential Dev. Corp.*, 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007)).

In *Lifetime Homes*, the defendant argued that the plaintiff's certificate of registration could not be used as prima facie evidence of a valid copyright because it was not made within five years of the first publication. *Lifetime Homes,* 510 F. Supp. 2d at 801. The court disagreed and relied on 17 U.S.C. § 410(c), which states that "[t]he evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court." *Id.* The court held that, with no evidence to the contrary, the plaintiff's certificate of registration sufficiently established that it held a valid copyright. The Court finds this analysis compelling. Plaintiff attached to its Complaint two certificates of registration that demonstrate the ownership trajectory of the Aladdin Sane Cover Photograph. As Defendants have

presented no evidence that either certificate is invalid, the Court finds that Plaintiff has established that it owns a valid copyright as to the image.

For the second element, Plaintiff must show evidence of copying. Because direct evidence of copying is rare, Plaintiff can create an inference of copying by showing (1) that Defendants had access to the work and (2) a substantial similarity between the two works at issue. *Humantech, Inc. v. Caterpillar, Inc.*, No. 11-14988, 2012 U.S. Dist. LEXIS 127499, at *15 (E.D. Mich. Sep. 7, 2012) (citing *Kohus v. Mariol*, 328 F.3d 848, 853-54 (6th Cir. 2003)). The Court finds that Plaintiff has made the requisite showing.

First, the Complaint alleges that both the Marti and the Gallery had access to the Aladdin Sane image after Plaintiff sent an exhibition quality print pursuant to the parties' consignment agreement. ECF No. 1, PageID.8 ¶ 40. Second, Plaintiff alleges that after Defendants obtained the image, they "reproduced and distributed the work without authorization from Plaintiff." *Id.* at PageID.17–18 ¶ 84. As evidence of this, Plaintiff includes in the Complaint texts messages sent from a prospective customer of the Gallery. These text messages show that Marti offered for sale from the Gallery a "cheap reproduction" of the Aladdin Sane Cover Photograph for $1,800. *Id.* at PageID.12 ¶ 56. The texts further show that Marti texted the prospective buyer an image of the cheap reproduction poster. The texts show that the poster was altered from the original image to appear substantially in black and white. It is sketched over

in multiple places and bears what Plaintiff alleges is Marti's signature. *Id.* at PageID.12–13 ¶ 57.

Plaintiff asserts that Marti was not authorized to create this work or any other derivative of the original image. ECF No. 1, PageID.13 ¶ 58. *Dice Corp. v. Bold Techs.*, 913 F. Supp. 2d 389, 411 (E.D. Mich. 2012) ("The Copyright Act gives the copyright holder 'exclusive rights' to 'prepare derivative works based upon the copyrighted work.'"). Plaintiff's Complaint does not demonstrate any additional instances of copying. These allegations create a sufficient inference of copying to create a prima facie case of copyright infringement.

### b. Willfulness

Plaintiff also alleges that Marti and the Gallery's infringement of the Aladdin Sane Cover Photograph copyright was willful, "as they acted with actual knowledge or reckless disregard for whether their conduct infringed upon Plaintiff's copyright. ECF No. 1, PageID.18 ¶ 86. "Infringement is willful when the infringer has knowledge that [his] conduct constitutes copyright infringement." *Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 775 (E.D. Mich. 2014) (citing *Digital Filing Sys., L.L.C. v. Agarwal*, No. 03-70437, 2005 U.S. Dist. LEXIS 35980, 2005 WL 1702954, at *2 (E.D. Mich. July 20, 2005)). This knowledge may be either actual or constructive. *Id*.

Plaintiff suggests that knowledge, and thus willfulness, is clear because the Gallery "has been in the art business for 30+ years and has worked with dozens if not hundreds of high-profile artists/photographers during that time period." *Id.* Further, Plaintiff states that Marti and the Gallery must know that professional artistic works are protected and not free for copying and reproduction given their time in the industry. *Id.* Plaintiff also cites Marti's alleged lies as evidence, arguing that he must have known his act of lying to the prospective customer to sell her a fraudulent "last remaining print in existence" of the Aladdin Sane Cover Photograph was wrongful. *Id.* The Court finds that the allegations in the Complaint, especially those in ¶ 86, are sufficient to allege willfulness.

Further, in the case of default, the Court "may infer that the defaulting defendant willfully infringed the plaintiff's copyrights." *Sony/ATV Music Publ'g LLC v. 1729172 Ont., Inc.*, No. 3:14-cv-1929, 2018 U.S. Dist. LEXIS 140856, at *23-24 (M.D. Tenn. Aug. 20, 2018) (citing *Microsoft Corp. v. Wen*, No. C 99-04561, 2001 U.S. Dist. LEXIS 18777, at *14-17 (N.D. Cal. Nov. 13, 2001) (default alone established willfulness based on allegations of willfulness in plaintiff's complaint)). Not only have Defendants admitted Plaintiff's allegations of willfulness by virtue of default, but they also failed to reply to the instant motion to contest Plaintiff's willfulness allegations. Accordingly, the Court finds sufficient factual

material in the Complaint to enter default judgment of willful infringement against Defendants Marti and the Gallery.

### c. Damages

Plaintiff is entitled to the requested statutory damages for Defendants' willful infringement in the amount of $150,000 as permitted by 17 U.S.C. § 504(c)(2). This award shall cover "all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally . . .". 17 U.S.C. § 504(c)(1).

Further, given evidence that Defendants attempted to improperly profit from the Aladdin Sane Cover Photograph and have failed to return the same, Plaintiff has made "a showing of past infringement and a substantial likelihood of future infringement," justifying issuance of a permanent injunction. *Premier Dealer Servs. v. Allegiance Adm'rs, LLC*, No. 2:18-cv-735, 2023 U.S. Dist. LEXIS 53548, at *10 (S.D. Ohio Mar. 28, 2023) (quoting *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 492 (6th Cir. 2007)). Accordingly, the Court shall issue a permanent injunction with respect to the Aladdin Sane Cover Photograph.

Lastly, having reviewed the accounting of Plaintiff's attorney's fees for this matter (ECF No. 42-3, PageID.251), and finding these fees reasonable, the Court will award Plaintiff the full request of $10,485 pursuant to 17 U.S.C. § 505. Further, the Court will award Plaintiff the full $618.66 of its requested costs. *Id.*

### d.  Other Works

Plaintiff asserts in the Complaint that it loaned to Defendants various additional prints that do not depict the Aladdin Sane Cover Photograph: (1) David Bowie Scary Monsters session 1980, (2) David Bowie in Lodger Dressing Room – London 1979, (3) David Bowie Lodger Set Build – Contact #2, (4) Scary Monster CC, (5) Scary Monster Color Contact Tint – AA – London 1979, (6) David Bowie Scary Monster 'Short Shadow' – London 1979, (7) David Bowie, Scary Monster 'Colour' – London 1979, (8) David Bowie Scary Monster Contact Sheet – London 1979, (9) David Bowie Scary Monster Contact Sheet #2, (10) David Bowie with Scottie Dog – London 1980, (11) David Bowie Lodger, Kodachrome – London 1979, (12) David Bowie Lodger, Original Polaroid. The Complaint does not sufficiently allege copyright infringement over these works.

First, it is not clear from the Complaint that Plaintiff owns a valid copyright over these other works. The only certificate of registration attached to the Complaint and attributable to Plaintiff covers "Group Registration Photos, Aladdin Sane Outtakes," images that were created in 1973. ECF No. 1, PageID.35. Plaintiff does not attach to its Complaint a certificate of registration, or any other documentary evidence, showing that it owns a valid copyright over the additional works listed above. Further, Plaintiff does not demonstrate in its Complaint, or even its Motion, whether the certificate of registration covers the additional images—though it

23

appears they do not. The images depicted in the additional prints were created between 1979 and 1980, which does not align with the 1973 date of creation for the Aladdin Sane Cover Photograph or album release.

Lastly, Plaintiff's Complaint does not tell a story of copying for these images. Though Plaintiff clearly alleges that Defendant copied, reproduced, and attempted to sell the Aladdin Sane Cover Photograph to a third party, Plaintiff does not allege a single instance of Defendants observing this behavior with the other images. To supplement this deficient pleading, Plaintiff asserts that Defendants infringed its copyrights simply by breaching the Agreement. ECF No. 42, PageID.201–202. This claim rests on an overstatement of the law. Though it is true that "a licensee who exceeds the scope of its copyright license infringes the licensed copyright," the breach of contract in question must infringe protections guaranteed by the laws of copyright. *See Design Basics, LLC v. Chelsea Lumber Co*., 977 F. Supp. 2d 714, 730 (E.D. Mich. 2013) ("For there to exist a potential claim of copyright infringement, the alleged use must be outside the scope of the license, and it must implicate one of the five exclusive rights of a copyright owner listed in 17 U.S.C. § 106."). Because the Court cannot find that Plaintiff sufficiently alleged ownership of a valid copyright over the above-listed images, it cannot find that Defendants' asserted breach sounded in copyright.

Accordingly, the Court will not enter default judgment of copyright infringement with respect to the prints and items not depicting the Aladdin Sane Cover Photograph.

### 2. Count Two — Distribution, Removal, or Alteration of Copyright Management Information

Plaintiff brings Count Two against the Gallery and Marti for infringement of each image depicted in the 17 photographs by either altering them with a signature or affixing them to a frame in a manner as to hide the copyright management information. ECF No. 1, PageID.20 ¶¶ 92–99. Plaintiff asserts that the Defendants, "knowingly and with the intent to enable or facilitate copyright infringement, provided and distributed copyright management information that is false in violation of 17 U.S.C. § 1202." ECF No. 1, PageID.20 ¶ 94. Plaintiff further alleges that Defendants "knowingly and with intent to enable or facilitate copyright infringement, removed or altered the copyright management information from the Work in violation of 17 U.S.C. § 1202(b)." *Id.* at ¶ 95.

Under 17 U.S.C. § 1202(b), "no party shall, without the authority of the copyright owner or the law" . . . "intentionally remove or alter any copyright management information . . . knowing or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right provided under the copyright statutes." 17 U.S.C. § 1202(b)(1). Any violation of this provision is enforceable pursuant to the remedies provided in 17 U.S.C. § 1203(c).

To prevail on a claim for removal of copyright management information ("CMI"), a plaintiff must show, "(1) the existence of CMI on the work at issue; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Design Basics, LLC v. Big C Lumber Co.*, No. 3:16-CV-53-HAB, 2019 U.S. Dist. LEXIS 121428, at *25 (N.D. Ind. July 22, 2019) (quoting *Fischer v. Forrest*, 286 F. Supp. 3d 590, 608 (S.D.N.Y. 2018)). A Plaintiff cannot recover under this provision without proof of a valid copyright. *Design Basics, LLC v. Big C Lumber Co.*, 2019 U.S. Dist. LEXIS 121428, at *25.

### a. The Aladdin Sane Photograph

There are sufficient allegations in Plaintiff's Complaint to support its CMI claim over the Aladdin Sane Photograph and derivative images. First, Plaintiff alleges that each of the exhibit quality prints sent to Defendants were affixed with a statement saying "EXHIBIT PRINT: NOT FOR RESALE" alongside an image of a skull and crossbones. ECF No. 1, PageID.6 ¶ 26. The Complaint asserts that Defendants covered this CMI by spray mounting the images to a frame. *Id.* at PageID.16 ¶ 72. Plaintiff also alleges that Defendant Marti fabricated CMI with his signature in an attempt to sell the image to a third-party prospective customer. *Id.* at PageID.12–13 ¶ 57.

The Court finds that the exhibition warning and Marti's signature qualify as CMI because they strike at "the name of, and other identifying information about,

the copyright owner of the work, including the information set forth in a notice of copyright." *Design Basics, LLC v. Ashford Homes, LLC*, 2018 U.S. Dist. LEXIS 212442, at *49.

Second, the Court finds that Plaintiff adequately alleges that Marti, on behalf of the Gallery, removed or altered the CMI. Plaintiff asserts that Marti admitted to spray mounting the prints, which would prevent a potential purchaser from seeing the "exhibition only" statement (ECF No. 1, PageID.16 ¶ 72) and that Marti signed the fraudulent poster he attempted to sell to a third-party consumer (*Id*. at PageID.12 ¶ 57). These alleged actions constitute alteration of Plaintiff's CMI because both destroy or change information that would inform an individual of the status and/or ownership of the image in question.

Finally, Plaintiff adequately alleges that the alteration was intentional. The Complaint demonstrates that the parties agreed that "there should be no sticking, gluing, cutting, or alteration of prints and no mounting of prints on board or other materials without prior written consent." *Id.* at PageID.30. Further, Plaintiff alleges that Marti was forewarned against altering the works and expressly promised Sandie Goodman that he would not do so. *Id.* at PageID.14 ¶¶ 60–63 (Marti allegedly stated that "I have no intention to 'manipulate' any of Duffy's images."). It is clear from these allegations that both Marti and the Gallery were under a knowing obligation not to alter or otherwise destroy Plaintiff's CMI. These allegations are sufficient to

support a finding that the Defendants' acts of altering Plaintiff's CMI were intentional.

As for damages, Plaintiff requests statutory damages pursuant to 17 U.S.C § 1203. Plaintiff is entitled to "recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3). Damages under this provision "may be awarded in addition to damages awarded for copyright infringement under section 504 of the Copyright Act . . ." *Sheldon v. Plot Commerce*, No. 15 CV 5885 (CBA) (CLP), 2016 U.S. Dist. LEXIS 116135, at *46 (E.D.N.Y. Aug. 26, 2016). The Complaint demonstrates that Plaintiff loaned four exhibition prints depicting the Aladdin Sane Cover Photograph and displaying related "exhibition only" CMI. ECF No. 1, PageID.5 ¶¶ 25–27; PageID.38. It further alleges that Marti admitted to spray mounting these prints and thus covering the CMI. *Id.* at PageID.16 ¶ 72. The other Aladdin Sane Cover Photograph print (Aladdin Sane Demi Eyes Open Contact) is a limited edition print that Plaintiff does not allege had CMI that was covered or altered by Plaintiff's spray mounting activity. The Court will thus award statutory damages of $25,000 with respect to the four exhibition prints, totaling $100,000.

### b. Other Works

Again, because Plaintiff's Complaint does not adequately allege ownership of a valid copyright over the additional images, the Court cannot enter default judgment

on Plaintiff's CMI claim as to these images. *See Design Basics, LLC v. Forrester Wehrle Homes, Inc.,* No. 3:15CV00666, 2018 U.S. Dist. LEXIS 55557, at *4 (N.D. Ohio Mar. 30, 2018) (To success on a CMI claim under 17 U.S.C. § 1202, "a copyright holder still bears the burden of proving two of the elements essential to a traditional copyright infringement claim: (1) that it owns the copyright; and (2) that the defendant had access to it.").

### 3. Count Three — Breach of Contract

As to Count Three, Plaintiff asserts breach of contract against the Gallery. Plaintiff alleges that the Gallery materially breached the terms of the Agreement by: "(a) failing to pay commissions due and owing to Plaintiff for Duffy artworks sold by Robert Kidd Gallery and not disclosed/accounted to Plaintiff; (b) selling or offering for sale exhibition copies of the Work; (c) sticking, gluing, cutting, altering, or mounting prints on boards or other materials without Plaintiff's prior written consent; and (d) using the Work to sell or offer for sale posters and/or other promotional material without prior approval from Plaintiff."

A claim for breach of contract is a state law claim. *Johnson v. City of Detroit*, 319 F. Supp. 2d 756, 780 (E.D. Mich. 2004).  And there is no dispute that Michigan law applies to Plaintiff's claim. To make a prima facie case of breach of contract under Michigan law, Plaintiff must show (1) that there was a valid contract, (2) that the Gallery breached the contract, and (3) that Plaintiff incurred damages because of

the breach. *Nicholas Logistics, Inc. v. Sargent Appliance Sales & Serv.*, No. 359793, 2023 Mich. App. LEXIS 2046, at *9 (Ct. App. Mar. 23, 2023).

The Court finds that Plaintiff has adequately alleged breach of contract under this standard. First, Plaintiff alleges that a valid contract exists by claiming that the parties entered into a consignment agreement on February 4, 2019 "whereby Plaintiff consigned seventeen (17) of Duffy's images of David Bowie to Robert Kidd Gallery for exhibition and sale." ECF No. 1, PageID.4 ¶ 18. Plaintiff also attaches to the Complaint a copy of a February 4, 2019 contract between Plaintiff and the Gallery. The contract outlines the terms of the alleged consignment agreement and bears signatures on behalf of both parties. *Id.* at PageID.29–31. With no evidence to the contrary, Plaintiff's allegations, and the attached exhibit, adequately plead that a contract existed.

Second, Plaintiff asserts that the Gallery materially breached the contract. Under Michigan law, a contract is breached "when one party fails to perform its portion of the contract." *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, P.C. v. Bakshi*, 483 Mich. 345, 359, 771 N.W.2d 411, 418 (2009). Here, the parties agreed that "the exhibition prints are not for sale" and "must be accounted for and returned" to Plaintiff when requested. ECF No. 1, PageID.30. Plaintiff asserts that Marti, on behalf of the Gallery, offered at least the Aladdin Sane exhibition print for sale via text message. *Id.* at PageID.10–15; PageID.6 ¶¶ 32–34. Further, the Gallery

allegedly never returned any of the 17 consigned prints upon repeated requests. PageID. *Id.* at PageID.15–17 ¶¶ 68–78. Plaintiff thus adequately pleads that the Gallery breached these provisions of the Agreement.

The parties also agreed that "there should be no sticking, gluing, cutting, or alteration of prints and no mounting of prints on board or other materials without prior written consent." *Id.* at PageID.30. Plaintiff adequately pleads that the Gallery admitted to breaching this obligation when Marti, its alleged sole member (*Id.* at PageID.4 ¶ 17), stated that the Gallery could not return the prints to Plaintiff because they had been spray-mounted (a form adhesion) to their frames. *Id.* at PageID.16 ¶ 72. Plaintiff adequately pleads that the Gallery breached this provision.

The parties agreed that "any use of Duffy images used for posters/postcards and promotional material for sale should be approved by DARC . . .". *Id.* at PageID.31. Plaintiff alleges and offers text messages showing that the Gallery, through Marti, offered for sale a "cheap reproduction" poster without Plaintiff's prior consent. ECF No. 1, PageID.12 ¶ 56. Plaintiff thus adequately pleads that the Gallery breached this provision of the Agreement.

Plaintiff also asserts that the Gallery breached the Agreement by failing to pay commissions on sales of Plaintiff's prints. *Id.* at PageID.22 ¶ 103. However, Plaintiff does not provide sufficient facts surrounding any sale for which it was not paid. Plaintiff states that the only sales for which it was paid came from an exhibition in

September 2019 through which the Gallery sold two prints. *Id.* at PageID.6 ¶ 29. Plaintiff states that it was never paid for any sales after this (*Id.* at ¶ 31) and assumes the Gallery sold, rather than destroyed or lost, the prints it refused to return. *Id.* at PageID.16 ¶ 75. Plaintiff claims that "[a]t least twice during Plaintiff's efforts to recover the prints, Marti offered to purchase them rather than return them to Plaintiff (further indicating that Marti has likely sold at least some of the exhibition/edition prints without having disclosed such to Plaintiff and is now trying to cover his tracks)." The Court finds, however, that the fact that the Gallery refused to return the prints is as consistent with it assertedly destroying the prints as it is with them being improperly sold. Thus, the Court does not find breach of this provision.

Finally, Plaintiff alleges in its Complaint that it incurred damages from the Gallery's breach in an amount of at least $75,000.

Accordingly, the Court finds that Plaintiff has met the three elements necessary to adequately plead breach of contract under Michigan law and is entitled to default judgment of the same. For damages, the Court will award Plaintiff's requested actual damages (the total market value) for the seventeen prints Defendants have failed to return to Plaintiff on request, as dictated under the Agreement. Plaintiff has provided sufficient documentary evidence through its inventory sheets and declarations that the total market value for the prints is $210,000. ECF No. 1, PageID.38–40; ECF No. 42-2, PageID.239 ¶ 77, PageID.242.

### 4. Count Four — Fraud in the Inducement

For Count Four, Plaintiff alleges that Marti is liable for fraud in the inducement of a contract. Fraud in the inducement "addresses a situation where the claim is that one party was tricked into contracting that is based on pre-contractual conduct." *CITY OF FLINT v. OK Indus.*, No. 271624, 2007 Mich. App. LEXIS 979, at *3 (Ct. App. Apr. 10, 2007) (cleaned up). Fraud in the inducement "occurs when the defendant materially misrepresents future conduct, reasonably expects the plaintiff to rely on the misrepresentation, and the plaintiff does rely on the misrepresentation by taking detrimental action that plaintiff would not otherwise have taken." *If Props. v. Macatawa Bank Corp.*, No. 307554, 2012 Mich. App. LEXIS 1946, at *5 (Ct. App. Oct. 9, 2012).

According to Plaintiff, Marti "made false representations to Plaintiff's representative (Sandie Goodman) that he had no intention "to manipulate any of Plaintiff's images as he had done with Gavin Evans' prints of David Bowie . . .". ECF No. 1, PageID.22 ¶ 106. Marti made these representations, Plaintiff asserts, "in an effort to induce Plaintiff to not terminate the Agreement and/or recall the Work from Robert Kidd Gallery." *Id.* at PageID.22 ¶ 107. Plaintiff asserts that it relied on Marti's alleged misrepresentations in agreeing to allow Marti to display the prints and in continuing to otherwise perform the Agreement. *Id.* at ¶ 109.

These allegations are not adequate to plead fraud in the inducement. Plaintiff does not contest that Marti's alleged inducing statements were made *after* the Agreement had been formed. By its own terms, Plaintiff's claim rests on the idea that Marti induced Plaintiff, through Sandie Goodman, to *continue* contracting with Defendants—not to form a contract. Because a claim for fraud in the inducement must be based on precontractual conduct, the allegations in the Complaint are inadequate to support such a claim. *Mercantile Bank of Mich. v. CLMIA, LLC*, No. 316777, 2015 Mich. App. LEXIS 244, at *34 (Ct. App. Feb. 12, 2015).

Thus, the Court will not enter default judgment on Plaintiff's fraud in the inducement claim.

### 5. Counts Five and Six — Common Law and Statutory Conversion

In counts five and six, Plaintiff alleges that Defendants are each liable for common law and statutory conversion. ECF No. 1, PageID.23–25. Under Michigan common law, "conversion is 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *A Inv., LLC v. Contact Aviation, LLC*, No. 358212, 2023 Mich. App. LEXIS 3317, at *19 (Ct. App. May 11, 2023) (quoting *Magley v M & W, Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018)).

To assert a claim for common law conversion, Plaintiff must allege that Defendants engaged in (1) a distinct act of dominion, (2) wrongfully, (3) over

Plaintiff's personal property. *A Inv., LLC v. Contact Aviation, LLC*, 2023 Mich. App. LEXIS 3317, at *19. On a claim for statutory conversion, Plaintiff must satisfy the common-law conversion elements and demonstrate that the conversion "was for the defendant's own use." *Magley v. M & W Inc.*, 325 Mich. App. 307, 314 n.3, 926 N.W.2d 1, 6 (2018). Plaintiff must thus plausibly assert that defendant "used or employed the converted property for some purpose that was personal to the defendant's interests. . .". *Smith v. Stephenson (Estate of Stephenson)*, Nos. 360453, 360513, 2023 Mich. App. LEXIS 3601, at *34 (Ct. App. May 18, 2023).

The Complaint satisfies the elements of common law conversion with respect to Defendants Marti and the Gallery. Plaintiff demonstrates through the consignment Agreement (ECF No. 1, PageID.30) and Loan Report (*Id.* at PageID.38–40) that it owned the prints and retained ownership of the prints for the life of the Agreement. Plaintiff also adequately asserts that the Agreement obligated the Gallery to return the prints when requests. *Id.* at PageID.30. Lastly, Plaintiff plausibly asserts that Marti and the Gallery violated its obligation by refusing to return the prints on request. Plaintiff asserts that it "has made multiple demands for return of its property (the Work), but Defendants have refused and/or failed to return the property . . .". ECF No. 1, PageID. 23 ¶ 113. This allegation is mirrored by Plaintiff's claim that it gave Marti and the Gallery multiple deadlines to return the prints, all of which were missed. *Id.* at PageID.16–17 ¶¶ 68–78.

Thus, Plaintiff's claim that it demanded and was denied its personal property is sufficient to allege common law conversion in Michigan. *See Newberry State Bank v. N. Microsystems, Inc.*, No. 193110, 1998 Mich. App. LEXIS 1635, at *2 (Ct. App. June 2, 1998) ("Conversion may be committed by the refusal to surrender personal property on demand where the person demanding possession has a priority interest in the property.").

Finally, Plaintiff successfully alleges statutory conversion—that Marti and the Gallery used Plaintiff's converted property for their own interests. According to Plaintiff, Marti breached the Agreement by spray mounting the prints to frames "thereby allowing Marti to sell them for exorbitant amounts." ECF No. 1, PageID.16 ¶ 72. Further, Plaintiff alleges that Marti refused to return the prints, and instead offered to purchase them, because Marti "has likely sold at least some of the exhibition/edition prints without having disclosed such to Plaintiff and is now trying to cover his tracks." ECF No. 1, PageID.16–17 ¶ 75; *see Id.* at PageID.17 ¶ 78. Thus, Plaintiff has adequately alleged a claim for statutory conversion and is entitled to default judgment on this claim. *See McLaren Reg'l Med. Ctr. v. CompleteRX, Ltd.*, No. 16-14268, 2017 U.S. Dist. LEXIS 111561, at *30 (E.D. Mich. July 18, 2017) (Allegation that defendant, instead of using Plaintiff's property for its intended purpose, "sold off some part of it . . . pocketed the sales proceeds, never reported the

sales to the defendant . . . are sufficient to establish that the defendant converted some portion of Plaintiff's property for its own benefit.").

The Court finds that Plaintiff has not sufficiently alleged a conversion claim with respect to Defendant Vanwormer and Marti Publishing LLC ("VMP"). Simply, there is no allegation that VMP asserted dominion over Plaintiff's property. To be sure, Plaintiff claims that VMP participated in, aided, or concealed Marti and the Gallery's acts of conversion. ECF No. 1, PageID. 24–25 ¶ 121. But there are no facts in the Complaint to support this allegation or otherwise show that VMP ever possessed Plaintiff's property.

Accordingly, Plaintiff's conversion claim fails with respect to VMP, and the Court will only enter default judgment on Counts Five and Six with respect to Marti and the Gallery. The Court will not award additional damages for Plaintiff's conversion claims. Plaintiff seeks the actual damages awarded for breach of contract, and such an award here would be duplicative. *See Black v. Ryder/P.I.E. Nationwide,* 15 F.3d 573, 581 (6th Cir. 1994) ("If two claims arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery.") (Quoting *United States Indus. v. Touche Ross & Co.*, 854 F.2d 1223, 1259 (10th Cir. 1988)).

### 6.  Count Seven — Civil Conspiracy

Plaintiff alleges in Count seven that Defendants are liable for civil conspiracy because of the alleged concerted actions it took to commit conversion of Plaintiff's property. ECF No. 1, PageID.25 ¶ 124. Under Michigan law, a civil conspiracy "is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Americana Assocs. v. Thomas A. Duke Co.*, 2021 Mich. Cir. LEXIS 1462, *31. Direct evidence of an agreement is not required to prove a civil conspiracy. Rather, "it is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact. Furthermore, conspiracy may be established by circumstantial evidence and may be based on inference." *Vibrus Group v. Brenda Pettway*, 2014 Mich. Cir. LEXIS 181, *13. Plaintiff may not recover by alleging civil conspiracy alone and must prove a separate actionable tort. *Id.*

Here, Plaintiff rests its conspiracy claim on the underlying tort of conversion, which this Court has already found adequately pled with respect to Marti and the Gallery, but not VMP. Thus, to find all three Defendants liable as Plaintiff requests, the Court must find only that a conspiracy existed amongst the three. *Rosenberg v. Rosenberg Bros. Special Account*, 134 Mich. App. 342, 354, 351 N.W.2d 563, 569 (1984) ("All those who, in pursuance of a common plan to commit a tortious act, actively take part in it and further it by cooperation or request, or who lend aid or

encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him.").

Plaintiff's Complaint offers facts sufficient to allege a civil conspiracy claim. To support its claim, Plaintiff asserts that each Defendant committed an overt act in furtherance of the ultimate tort of conversion committed by Marti and the Gallery. First, as outlined with respect to the prior Counts, Plaintiff contends that Marti, on behalf of the Gallery, made false statements to at least one prospective customer for the purpose of fraudulently selling Plaintiff's prints for profit without sharing these profits with Plaintiff. ECF No. 1, PageID.25 ¶ 126; *see id.* at PageID.10–17. Further, Plaintiff's asserts that "Marti and Vanwormer agreed to form [VMP]" and have used it to funnel ill-gotten sales profits that Defendants intended to hide from Plaintiff. *Id.* at PageID.25 ¶ 126. As a specific instance of the alleged agreement, Plaintiff asserts that Marti instructed a prospective customer of the Gallery, whom he intended to fraudulently sell one of Plaintiff's prints, to write a check out to VMP as payment. *Id.* at PageID.15 ¶ 66. These allegations demonstrate concerted action between Marti and the Gallery and further show that VMP, in its willingness to accept proceeds of an unlawful sale, "lent aid or encouragement to the wrongdoer" in furtherance of conversion. *See Rosenberg v. Rosenberg Bros. Special Account*, 134 Mich. App. At 354.

Thus, for the reasons stated above, the Court finds that Plaintiff has adequately alleged a claim for conspiracy and is entitled to default judgment on this claim. The Court will not award additional damages for Plaintiff's conspiracy claim, as such an award would be duplicative of the remedy for Plaintiff's breach of contract claim.

### 7. Count 8 — Violation of the Michigan Consumer Protection Act

Lastly, Plaintiff alleges that Defendants violated section 445.903 of the Michigan Consumer Protection Act ("MPCA"). Mich. Comp. Laws § 445.901 *et seq*; ECF No. 1, PageID.26. To maintain a claim under the MCPA, a plaintiff must show that "(1) the defendant is engaged in trade or commerce, (2) the conduct by the defendant is prohibited under Michigan Compiled Laws 445.903(1);   (3) if requesting declaratory or injunctive relief, the plaintiff is a person as defined in the Act; and (4) if requesting individual or class damage relief, the plaintiff is a 'person who suffers loss.'" *Ealey v. Benjigates Estates, LLC*, No. 13-10723, 2013 U.S. Dist. LEXIS 172595, at *19 (E.D. Mich. Dec. 9, 2013) (cleaned up). The MCPA permits any "person" to bring an action to enforce its provisions even if the person was not party to a contested transaction. *Barth v. First Consumer Credit*, No. 278517, 2008 Mich. App. LEXIS 2389, at *9 (Ct. App. Nov. 25, 2008).

First, the Court finds that Defendants are engaged in trade or commerce, as they are in the business of providing goods for sale. *See J. Howard Cavin, Pers. Representative of the Estate of Douglas H. Cavin v. GMC*, No. 190558, 1997 Mich.

App. LEXIS 2103, at *9 (Ct. App. Nov. 4, 1997). Second, Plaintiff alleges that Defendants violated the MCPA through its conduct of "surreptitiously selling or offering for sale display/exhibition prints as if they were limited edition prints purchased by Marti himself, funneling sales money through Vanwormer & Marti Publishing in an effort to avoid accounting to Plaintiff, and defacing the Work to add Marti's signature and cover up/remove the embossed stamps/stickers thereon identifying such as display/exhibition." ECF No. 1, PageID.26 ¶ 129.

Having previously discussed each of Plaintiffs allegations above, the Court finds them sufficient to satisfy the second element of a MPCA. Plaintiff has at least alleged that Marti and the Gallery, through altering, misrepresenting, and attempting to sell exhibition prints as limited-edition prints, are liable for "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Mich. Comp. Laws § 445.903 (e). Further, Plaintiff has sufficiently alleged that Marti and VMP, by attempting to charge and accept payment for an exhibition print at the rate chargeable for a rare, authentic print, are liable for "charging the consumer a price that is grossly in excess of the price at which similar property or services are sold." Mich. Comp. Laws § 445.903(z).

Finally, as Plaintiff seeks damages for Defendants' violations, the Court finds that Plaintiff is a "person who suffers loss" under the MCPA. First, "person"

includes business entities under the act. *Allan v. M & S Mortg. Co.*, 138 Mich. App. 28, 42, 359 N.W.2d 238, 244 (1984). Further, Plaintiff successfully alleges loss by stating that Defendants' secretive sales activity resulted in Plaintiff never receiving its valued prints back, as required by the Agreement. ECF No. 1, PageID.16–17 ¶¶ 68–78.

The Court thus finds that the Complaint sufficiently states a claim under the MCPA and will enter default judgment on the same. The Court will not award additional damages for Plaintiff's MCPA claim, as such an award would be duplicative of the remedy for Plaintiff's breach of contract claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Final Judgment and/or Motion for Final Summary Judgment (Against Marti) [#42] is **GRANTED IN PART**. The Court does not reach Plaintiff's Motion for Summary Judgment, so this Motion is **DENIED WITHOUT PREJUDICE**.

- Count 1: default judgment is **GRANTED IN PART.**

  o Default Judgment of Willful Copyright Infringement against Marti and the Gallery is granted with respect to the Aladdin Sane Cover Photograph; it is denied with respect to Plaintiff's other claimed works that do not depict the Aladdin Sane Cover Photograph. Plaintiff is awarded statutory damages of $150,000, attorney's fees of $10,485, and costs in the amount of $618.66.

- Count 2: default judgment is **GRANTED IN PART**.

  o Default Judgment of Distribution, Removal, or Alteration of

Copyright Management Information against Marti and the Gallery is granted with respect to the Aladdin Sane Cover Photograph and derivative images; it is denied with respect to Plaintiff's other claimed works that do not depict the Aladdin Sane Cover Photograph. Plaintiff is awarded statutory damages totaling $100,000.

- Count 3: default judgment is **GRANTED**.

  o Default judgment of Breach of Contract against the Gallery is granted. Plaintiff is awarded $210,000 in compensatory damages.

- Count 4: default judgment is **DENIED**.

  o Default judgment of Fraud in the Inducement against Marti is denied.

- Counts 5 and 6, default judgment is **GRANTED IN PART**.

  o Default judgment of common and statutory conversion is granted against Marti and the Gallery but denied with respect to VMP.

- Count 7: default judgment is **GRANTED**.

  o Default judgment of conspiracy is granted against all Defendants.

- Count 8: default judgment is **GRANTED**.

  o Default judgment for violations of the Michigan Consumer Protection Act is granted against all Defendants.

- Plaintiff's Motion for Summary Judgment against Marti is **DENIED WITHOUT PREJUDICE**.

The Court hereby awards Plaintiff actual and statutory damages totaling **$460,000.**

Plaintiff is also awarded attorney's fees and costs in the amount of **$11,103.66.**

With respect to the Aladdin Sane Photograph and derivative imagery only,

Plaintiff's Motion for a Permanent Injunction is **GRANTED**. Defendants Marti and

the Gallery are hereby **PERMANENTLY ENJOINED** from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

**IT IS SO ORDERED**.

Dated:  October 30, 2023                    /s/ Gershwin A. Drain
                                            GERSHWIN A. DRAIN
                                            U.S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 30, 2023, by electronic and/or ordinary mail.
/s/Teresa McGovern
Case Manager